(121 App. Div. 81)

### KELLEY v. AMERICAN LOCOMOTIVE CO.

(Supreme Court, Appellate Division, Fourth Department. July 9, 1907.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—NEGLIGENCE OF MASTER—QUESTION FOR JURY.

    In an action against a railroad for injuries causing the death of an employé through the escaping of steam from the blow-off cock of defendant's locomotive, evidence *held* insufficient to warrant the submission to the jury of the question of defendant's negligence in failing to furnish a safe place to work.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1010–1031.]

2. SAME—FAILURE OF MASTER TO INSTRUCT AS TO DANGERS.

    In an action against a railroad for injuries causing the death of an employé through the escaping of steam from the blow-off cock of defendant's locomotive, evidence examined, and *held* insufficient to warrant the submission to the jury of the question of defendant's negligence in failing to warn deceased of the dangers incident to the work.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1044–1050.]

3. SAME—PROMULGATION OF RULES—DUTY OF MASTER.

Where an employé was killed through the escaping of steam from a blow-off cock of defendant's locomotive, defendant could not be held negligent for failing to promulgate rules to prevent decedent from accidentally moving the lever opening the cock while his face was close to it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 283–289.]

Appeal from Trial Term, Chautauqua County.

Action by James Kelley, as administrator, against the American Locomotive Company. Judgment for defendant, entered on a nonsuit, and plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Stearns, Thrasher & Sullivan, for appellant.

Warner & Farnham, for respondent.

WILLIAMS, J. The judgment should be affirmed, with costs.

The action was brought to recover damages for the death of plaintiff's intestate, alleged to have resulted from the defendant's negligence. The nonsuit was granted on the ground that there was a failure to prove any negligence on the part of the defendant which resulted in the death. The immediate cause of death was injury by steam escaping from the blow-off cock of a locomotive. This stopcock was attached to a pipe extending from the lowest part of the boiler. It was about 10 inches below the boiler, and had a horizontal opening about 3 inches in diameter. Attached to the stopcock was a horizontal lever, 18 inches long, extending towards the rear of the locomotive. This lever was used to open the stopcock, and could be operated by pressure against the same, or pulling a rod attached to it and extending up to the running board. The construction was a proper and necessary one to put on locomotives, so as to allow the engineer by its use to clean out the boiler. This stopcock was by some means opened when deceased was at work in close proximity to it, and the injury was inflicted which resulted in death. There is no suggestion that the stopcock opened of its own accord, or was opened by other means than the moving of the lever by some one. The two living witnesses present at the time of the accident say they did not move the lever. If this is true, the lever must have been accidentally moved by the deceased himself. The suggestions of negligence by the defendant, made here, are: (1) Failure to furnish a safe place to work. (2) Failure to instruct deceased as to dangers incident to the work. (3) Failure to promulgate rules as to the employment.

The first ground seems to involve not so much a safe place to work as safe and suitable machinery and appliances. The claim made is that the place should have been made safe by inserting in the opening of the stopcock a plug or cap. The stopcock seems to have been constructed and used in the ordinary, usual way. There was no danger to be apprehended from it, unless a person was in close proximity to it when it was opened and the locomotive had steam on. To be effectively used, it would seem to be essential to have it so the engineer

could operate it by pulling upon the rod on the running board, without going under the locomotive and removing a plug or cap from the opening. There was some effort made to show that it was usual to make use of the cap or plug, but no evidence to that effect was elicited. On the contrary, the witness said it was not the custom to make caps or plugs for the openings; that he had not seen any; that the purpose of the thread in the inside of the opening was to enable the engineer, if he desired to keep the locomotive clean, to attach a pipe to carry the dirt and sediment from the boiler outside. We think there was no basis in the evidence for the submission of this ground of negligence to the jury.

The second ground relates to the deceased's knowledge of the dangers of steam escaping from the stopcock. There is no evidence directly that deceased had no knowledge or was not informed on this subject. He had been at work in defendant's plant for about two years, under the same foreman. He had not worked at this particular kind of labor all that time; but he was about the plant, and we may assume acquired some knowledge of locomotives and the operation of steam. He was the head man in charge of the work at the time of the accident, and the other man was his helper. He must, therefore, have been a man of some mind, not a mere common laborer. He had put the bands on four locomotives that week—just the work he was engaged in when he received his injuries—and all these locomotives had stopcocks on, constructed like the one in question. They were cold— had no steam on; but it cannot be assumed he was ignorant of the nature of steam, or that it would escape from the boiler if the stopcock was opened, or that he did not know how it was opened. He did know this boiler had steam on, as it was warm. We think there was no reason for submitting this ground of negligence to the jury, under the evidence.

The third ground relates to rules. We fail to see what rules could have been formulated to prevent this accident. If the lever had been moved by some one connected with the locomotive, by pulling up the rod on the running board, it might be argued that a rule would have been proper in analogy to the rule, in case of a man cleaning the ashes from under the locomotive, that the locomotive should not be moved until it was ascertained that no one was under it—in this case, that the engineer should not operate this stopcock to clean out the boiler until it was ascertained that no one was at work under the locomotive. But would a rule be necessary to prevent the laborer himself from accidentally moving the lever, and opening the stopcock while his face was in close proximity to it? It seems to us not to be a matter for the promulgation of rules.

We conclude that the trial court properly granted a nonsuit in the case, and that the judgment should be affirmed. All concur.